PETER C. WOLFF, JR.   #2332
Federal Public Defender
District of Hawaii
ALEXANDER SILVERT
First Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii 96850
Telephone:  (808) 541-2521
Facsimile:   (808) 541-3545
E-Mail:      alexander_silvert@fd.org

Counsel for Defendant
JOHN JAMES RODRIGUES

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　Plaintiff<br><br>　　　vs.<br><br>JOHN JAMES RODRIGUES<br>　　　Defendant | ) DC No. 1:08-cr-00668-DKW-1<br>)<br>) Motion for Reduction of Sentence<br>)<br>) Exhibits A – D [Exhibit A filed<br>) separately *under seal*]<br>)<br>) Certificate of Service |

**Motion for Reduction of Sentence**

Defendant-Appellant, John James Rodrigues, through counsel and pursuant to 18 U.S.C. §3582, moves this Court to reduce his sentence.

1.　　Rodrigues is 65 years old. ECF 145 (PSR) at p. 2. He has type 2 diabetes with renal manifestations. Exhibit A, at 7. And is obese. *Id.* (BMI 37.8). Because of these and other documented ailments, the BOP classifies Rodrigues as Care Level 3, of 4 (Exhibit B). The BOP thus deems Rodrigues' condition as

complex and chronic, because he requires frequent clinical contact in order to prevent complications and hospitalization. BOP, *Clinical Guidance: Care Level Classification for Medical and Mental Health Conditions or Disabilities*, at pdf p. 5 (May 2019), www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Oct. 7, 2020). Care Level 3 inmates also typically "require assistance with some activities of daily living," such as "eating, urinating, defecating, bathing, and dressing/undressing." *Id.*

The BOP presently holds Rodrigues in Tucson USP. He has been serving a life sentence on a drug offense since his arrest in 2008. ECF 147 at 2–3; ECF 145 at p. 2. Codefendants received sentences of 60 and 120 months, the latter reduced to 96 pursuant to 'drugs-minus-two' litigation. ECF 145 at ¶¶9–10; ECF 169. When sentenced in 2010, drug type and amount drove Rodrigues' offense level, setting it at 36 without further enhancement or reduction. ECF 145 at ¶¶21–34. His criminal history category was IV, on 9 criminal history points for non-violent offenses. ECF 145 at ¶¶36–43. His guideline range was 262–327 months, ECF 145 at ¶57, but the government triggered the mandatory life sentence by citing his prior Hawaii convictions for felony drug offenses. ECF 145 at ¶¶55–56; ECF 23; 21 U.S.C. §851. Executively shorn of all judicial discretion, his sentencing hearing was an entirely rote and non-adversarial affair.

Under today's Guidelines, Rodrigues' base offense level would be 34 and

his range 210–262. USSG §2D1.1(c)(3) & §5A (table). Under today's version of 21 U.S.C. §841(b)(1)(A), two or more "serious drug felony" convictions trigger a 25-year sentence, not life. More troublingly, Rodrigues' prior convictions for drug possession don't trigger enhancement under §841 anymore, because they weren't for manufacturing, distribution, or possession-with-intent-to-distribute. ECF 23; 21 U.S.C. §802(57); 18 U.S.C. §924(e)(2); Haw. Rev. Stat. §§712-1242(1)(b)(i) and 712-1243. A defendant with similar criminal history being sentenced for similar offense conduct would today receive an adversarial sentencing hearing and a sentence filtered through judicial discretion, subject only to §841(b)(1)(A)'s ordinary 10-year mandatory minimum (a minimum Rodrigues has fully served), rather than rote imposition of a mandatory life sentence.

2. Rodrigues' warden has twice denied compassionate release, most recently on August 21, 2020 (Exhibit C). Section 3582(c)(1)(A) allows for judicial review "after the defendant has fully exhausted all administrative remedies to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*[.]" 18 U.S.C. §3582(c)(1)(A) (emphases added). Presentment sated by the warden's receipt of Rodrigues' release request more than 30 days ago, the door to judicial review is open. To whatever extent this Court might think the statute's administrative exhaustion clause was

triggered by the warden's denial, *United States v. Wallace*, No. 1:16-cr-00744-DKW-9, ECF 794 (order) (D. Haw.) (Oct. 7, 2020), counsel notes that Rodrigues did not administratively appeal within 20 days and, thus, might be deemed to have waived his administrative appellate rights so as to allow for judicial review under this Court's *Wallace* ruling.[1]

3.  Section 3582(c)(1)(A) allows this Court to reduce Rodrigues' sentence—and to convert his unserved imprisonment to lifetime supervision—if it considers applicable §3553(a) factors, finds "extraordinary and compelling reasons," and ensures consistency with "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. §3582(c)(1)(A). This Court has consistently ruled that USSG §1B1.13 is an applicable policy statement when a defendant has

---

[1]  *Wallace* stumbles on this point because this Court read mutual exclusivity into the administrative exhaustion and presentment clauses, turning them on or off based on whether and when the warden denies the request or refuses to act on it. *Wallace*, ECF 794 at 5–6. The administrative exhaustion and presentment clauses do not, however, make the conduct of the warden dispositive of when judicial review occurs. The statute opens the door to judicial review at the conclusion of administrative appeal, or at the conclusion of 30 days after presentment; neither turns on whether, much less when, a warden acts or does not act on the request. The *Wallace* ruling also leaves the "whichever is earlier" clause no work to do. If the warden remains silent for 30 days, presentment has run and opens the door to judicial review, without an administrative appeal (no denial having triggered it) even commencing. If the warden denies within 30 days, then administrative appellate exhaustion starts up and the presentment period stops running. Because the two alternatives never run at the same time, it isn't possible for one to cease running "earlier" than the other.

filed a §3582(c)(1)(A) motion, that §1B1.13 is owned *Stinson* deference, and that §1B1.13 does not allow independent judicial determination of what's extraordinary and compelling. *Wallace*, ECF 794 at 8; *United States v. Shawn Rodrigues*, 2020 WL 5351029, at *2–*4 (D. Haw.) (Sept. 4, 2020) (slip copy); *Stinson v. United States*, 508 U.S. 36 (1993).

The Second Circuit's recent decision in *United States v. Zullo*, ___ F.3d ___, 2020 WL 5739712 (CA2 2020),[2] if not the plain language of statute and guideline, invites reconsideration of this Court's §1B1.13 rulings.[3] The statute calls for consistency with "applicable policy statement*s* issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A) (emphasis added). That use of the plural contemplates a piecemeal approach and admits that a policy statement applicable in some cases may not be applicable in others. In the wake of the First Step Act, section 1B1.13 has become such a policy statement, because it limits its applicability to cases in which the BOP, not the defendant, has moved for a

---

[2] Westlaw reports the case under the misnomer *United States v. Brooker*. Brooker and others were defendants, but Zullo was the sole appellant. The Second Circuit lists the case under the name used here, as *United States v. Zullo* (docketed as CA2 No. 19-3218-cr), see www.ca2.uscourts.gov (Decisions tab, "Zullo" basic search) (last visited on Oct. 7, 2020).

[3] This Court's one-line, footnote dismissal of *Zullo* and the reasoning sketched above really ought to be elaborated, lest it simply appear stubborn rather than persuasive on appeal. *Wallace*, ECF 794 at 8 n. 4 (registering nothing more than that "this Court does not agree" with *Zullo*).

reduction. Its opening clause, "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. §3582(c)(1)(A), the court may …[,]" explicitly does so. USSG §1B1.13. The guideline's application notes do so too. Application Note 4: "A reduction under *this* policy statement may be granted *only* upon motion by the Director of the Bureau of Prisons …." USSG §1B1.13, comment. (n. 4) (emphases added). And Application Note 5 identifies only one thing—a BOP motion grounded on §1B1.13(1) and (2)—as being consistent with "this policy statement." USSG §1B1.13, comment (n. 5). Section 1B1.13 is not an applicable policy statement when reduction is sought by a defendant rather than the BOP.

Which is what *Zullo* holds: "we read the Guideline as surviving, but now applying only to those motions that the BOP has made." *Zullo*, 2020 WL 5739712, at *6. "We conclude," the Second Circuit elaborated,

> that after the First Step Act, th[e guideline's] language must be read not as a description of the former statute's requirements, but as defining the motions to which the policy statement applies. A sentence reduction brought about not "upon motion by the Director of the Bureau of Prisons" is not a reduction "under this policy statement." USSG §1B1.13, comment. (n. 4). In other words, if a compassionate release motion is not brought by the BOP Director, Guideline §1B1.13 does not, by its own terms, apply to it. Because Guideline §1B1.13 is not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.

*Zullo*, 2020 WL 5739712, at *6. The Second Circuit also rejected severability of the guideline's BOP-related bits: "because we do not abrogate Guideline

6

§1B1.13—but only read its applicability to be limited to cases in which the BOP has made a motion—severability does not come up. There is nothing to sever." *Id.* at *7. In sum, then, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline §1B1.13, limits the district court's discretion." *Id.*

Because the Commission hasn't promulgated a policy statement applicable to a defendant's compassionate release motion, there is none to defer to or be consistent with. This Court's discretion to grant Rodrigues' motion for compassionate release is limited solely by the statute itself. Absent an applicable policy statement, all the statute requires is consideration of §3553(a)'s sentencing factors, "to the extent that they are applicable," and a finding of "extraordinary and compelling reasons," nothing more. 18 U.S.C. §3582(c)(1)(A).

4. Amidst a global pandemic that exposes someone with Rodrigues' physical and medical conditions to a significantly increased risk of hospitalization or death if he becomes infected, the statute's extraordinary-and-compelling criterion is readily met. Numerous courts have ruled that conditions that increase the risk of death or hospitalization from Covid-19, especially (but not necessarily) when coupled with imprisonment in facilities that have not prevented infection

from the virus, present circumstances that are extraordinary and compelling. See, e.g., *United States v. Garcia*, 2020 WL 3547933, at *4–*6 (D. Haw. (HG)) (June 30, 2020) (slip copy); *United States v. Baclaan*, 2020 WL 2820199, at *4 (D. Haw. (HG)) (May 29, 2020) (slip copy); *United States v. Malufau*, 2020 WL 4218038, at *4 (D. Haw. (LEK)) (July 22, 2020) (slip copy) (obesity, type 2 diabetes; Forest City FCI); *United States v. Ben-Yhwh*, 453 F.Supp.3d 1324, 1331 (D. Haw. 2020) (LEK) (age (73), diabetes, Parkinson's, asthma); *United States v. Galu*, 2020 WL 5521034, at *2 (D. Haw. (SOM)) (Sept. 14, 2020) (slip copy); *United States v. Hernandez*, 2020 WL 5521035, at *2 (D. Haw. (SOM)) (Sept. 14, 2020) (slip copy) (obesity; age (60); Terminal Island FCI); *United States v. Seals*, 2020 WL 3578289, at *4–*6 (D. Haw. (SOM)) (July 1, 2020) (slip copy); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. (SOM)) (May 29, 2020) (slip copy) (hypertension; Lompoc USP); *United States v. Caminos*, ___ F.Supp.3d ___, 2020 WL 4199704, at *3 (D. Haw. 2020) (JMS).

Such cases support finding that Rodrigues' age (65), obesity (BMI 37.8), and type 2 diabetes, if not the remainder of his ailments and the BOP's Care Level 3 designation, are extraordinary and compelling, because such circumstances increase the risk that he will die or require intensive hospital care if Tucson USP, as it has in the case of 12 other inmates and 7 staff to date, fails to prevent him from becoming infected with Covid-19. BOP, *Covid-19 resource page, Full*

*breakdown and additional details* (statistics reported for Tucson USP: 3 inmates positive, 9 inmates recovered, 7 staff recovered), www.bop.gov/coronavirus/ (last visited Oct. 8, 2020). His circumstances are particularly on-point with those that Your Honor's colleagues found extraordinary and compelling in *Malufau*, *Ben-Yhwh*, *Hernandez*, and *Kamaka*.

Not without salience, moreover, is the Eighth Amendment baseline *Helling v. McKinney*, 509 U.S. 25 (1993), sets. *Helling* held that inmates claiming involuntary exposure to environmental tobacco smoke stated a claim under the Eighth Amendment. *Id.* at 27–28, 35. Here's the part to pay attention to:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. In *Hutto v. Finney,* 437 U.S. 678, 682 (1978), we noted that inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease. This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.
>
> That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is "reasonable safety." *DeShaney v. Winnebago County Dept.*

9

> *of Social Services*, 489 U.S. 189, 200. It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Youngberg v. Romeo,* 457 U.S. 307, 315–316 (1982). It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event. Two of them were cited with approval in *Rhodes v. Chapman,* 452 U.S. 337, 352, n. 17 (1981). *Gates v. Collier,* 501 F.2d 1291 (CA5 1974), held that inmates were entitled to relief under the Eighth Amendment when they proved threats to personal safety from exposed electrical wiring, deficient firefighting measures, and the mingling of inmates with serious contagious diseases with other prison inmates. *Ramos v. Lamm,* 639 F.2d 559, 572 (CA10 1980), stated that a prisoner need not wait until he is actually assaulted before obtaining relief. As respondent points out, the Court of Appeals cases to the effect that the Eighth Amendment protects against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering are legion. We thus reject petitioners' central thesis that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment.

*Helling*, 509 U.S. at 33–34 (citations silently emended; record citation omitted).

*Helling* rejects the notion that the Eighth Amendment "does not protect against prison conditions that merely threaten to cause health problems in the future, no matter how grave and imminent the threat." *Id.* at 33. Instead, the Eighth Amendment "protects inmates against future harm" and "require[s] a remedy," even though "the likely harm" may not "occur immediately and even though the possible infection," be it from hepatitis, venereal disease, or Covid-19, "might not affect all of those exposed." *Id.* Section 3582(c)(1)(A) provides the remedy the Eighth Amendment demands when a defendant's sentence, declining physical and

medical condition, and imprisonment in a facility that is unable to prevent inmates from becoming infected by a communicable disease work together to expose him to death or severe, debilitating illness.

Three Tucson USP inmates presently infected, along with 9 recovered inmates and 7 recovered staff, attest to the BOP's inability to guard Rodrigues against infection, even absent any analogue to the reports filed in other cases attesting to the BOP's inability to prevent inmates from infection, hospitalization, and death. See, e.g., Venters, Homer, MD, *Covid-19 Inspection of BOP Lompoc*, filed in *Torres v. Milusnic*, No. 2:20-cv-04450-CBM-PVC (C.D. Cal.), ECF 101-1, at ¶37 (Sept. 25, 2020) (detailing "[d]eficiencies in the BOP/Lompoc Covid-19 response"). Deliberate indifference to Rodrigues' condition and the BOP's inability to prevent his exposure to "a serious, communicable disease, on the ground that [he] shows no serious current symptoms," is not an out. *Helling*, 509 U.S. at 33. And this Court should "not await a tragic event," such as occurred in *United States v. Lino*, No. 1:17-cr-00645-LEK-2 (D. Haw.) (inmate dies while motion pending), before granting Rodrigues the remedy §3582(c)(1)(A) allows and the Eighth Amendment demands. Lest Lino's case not be cautionary tale enough, the BOP's press releases provide a nearly daily litany of another 124 (and counting) such tragic events, each equally attesting the need for, and the dire consequence of ignoring, *Helling*'s baseline. BOP, *Resources, Press Releases*

(search: title, "Inmate Death," with 2020 year restriction); BOP, *Covid-19 resource page* (reporting 125 Covid-19 related deaths) (last visited Oct. 8, 2020).

Even if winnowed through §1B1.13, comment. (n. 1(A))'s physical and medical condition criterion, the foregoing still suffices. BOP's Care Level 3 designation satisfies the guideline's requirement that his daily activities be affected. And, in any event, the baseline for self-care amidst an uncontrolled pandemic does not bottom out on simply whether the defendant can feed and bathe himself. It includes whether he can adequately self-guard against infection from Covid-19, a daily activity for all of us now.

5. An additional circumstance that makes Rodrigues' case extraordinary and compelling under the statute is the significant change Congress has made to the sentencing scheme that applies to Rodrigues' offense conduct and criminal history. *Zullo* again:

> [A] district court's discretion in this area—as in all sentencing matters—is broad. The only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation ... *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). In the instant case, Zullo does not rely *solely* on his (apparently extensive) rehabilitation. Zullo's age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction. Indeed, Congress seemingly contemplated that courts might consider such circumstances when it passed the original compassionate release statute in 1984. See S. Rep. No. 98-225, at 55-56 (1984) (noting that reduction may be appropriate when "other extraordinary and compelling circumstances justify a reduction of an *unusually long* sentence" (emphasis added)); see also

12

> *United States v. Maumau*, 2020 WL 806121, at *6-*7 (D. Utah) (Feb. 18, 2020) [(unpublished)] (further discussing this history and collecting cases where district courts have reduced sentences in part because they were overly long).

*Zullo*, 2020 WL 5739712, at *8 (citation, footnote, and paragraph break omitted; remaining citation emended). This Court may and should consider the fact that Rodrigues' life sentence is too long under presently prevailing norms.

      6.     An independent finding that a defendant poses no danger is not a thing under the statute's extraordinary-and-compelling criterion (the statute only calls for it under the age-and-service criterion). 18 U.S.C. §3582(c)(1)(A). Dangerousness is a consideration only to the extent it arises under one of §3553(a)'s factors. But be it filtered through a §3553(a) factor or deemed demanded by §1B1.13, the circumstances here evince Rodrigues doesn't pose a enough of a risk of harm to others to outweigh the reasons that support granting his motion.

     He is 65 and ailing to such a degree that BOP has classified him as Care Level 3 for the past ten years, a designation signifying his need for frequent medical monitoring and assistance with daily activities. The likelihood that he will harm others in such a state requires turning a blind eye on his current condition. His 12 years of imprisonment, moreover, has resulted in a *one*-page discipline record (Exhibit D). Two write-ups involved unauthorized possession (of what isn't recorded) and were sanctioned with loss of phone and commissary privileges respectively (signifying they weren't a big deal). Exhibit D; 28 C.F.R. §541.3

(Table 1). The third, from 2016, was sanctioned more severely, but involved him "cleaning up blood in unit after a fight," apparently without having been told to do so. Exhibit D. None of these violations involved him being violent and don't provide a reason to find him a danger. His criminal history doesn't either.

7. Nor do other §3553(a) factors warrant denying Rodrigues' motion. His was a routine drug offense and his prior crimes were largely related to addiction and were nonviolent. His history and characteristics as a nearly-model inmate, with just three minor write-ups over a dozen years despite being a lifer, weigh in his favor. Seriousness of his offense, respect for the law, just punishment, and deterrence are furthered by12 years served and lifetime supervision. Lifetime supervision also serves to protect the public. While further imprisonment doesn't promote rehabilitation, because the BOP generally doesn't allow lifers to participate in rehabilitative programs. The kinds of sentences available and avoidance of sentencing disparity, furthermore, invite (require, actually) consideration of the changes that have occurred to the sentencing scheme governing Rodrigues' offense conduct and criminal history, which, as noted above, weigh in favor of reducing his over-long, disproportionate sentence. Your Honor's failure to release any inmate, while Your Honor's colleagues in this District have not hesitated to release others similarly situated, also undermines the avoidance of arbitrary disparity (an assignment rotation should not dictate whether an inmate

14

receives compassionate release or not).

8. Details of Rodrigues' release plan can be provided to this Court or the Probation Office upon request.

9. This Court should grant Rodrigues' §3582(c)(1)(A) motion, reduce his sentence to time served, and convert the remainder of his imprisonment to supervised release.

DATED: Honolulu, Hawaii, October 8, 2020.

                                    /s/ Alexander Silvert
                                    ALEXANDER SILVERT
                                    Counsel for Defendant
                                    JOHN JAMES RODRIGUES

## Certificate of Service

I, ALEXANDER SILVERT, hereby certify that on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served Electronically through CM/ECF:

    THOMAS C. MUEHLECK    tom.muehleck@usdoj.gov
    Assistant United States Attorney
    300 Ala Moana Boulevard, Room 6100
    Honolulu, Hawaii 96850

    Attorney for Plaintiff
    UNITED STATES OF AMERICA

Served via Email:

    MALIA EVERSOLE
    United States Probation Officer
    300 Ala Moana Boulevard, Room 2300
    Honolulu, Hawaii 96850

DATED: Honolulu, Hawaii, October 8, 2020.

                        /s/ Alexander Silvert
                        ALEXANDER SILVERT
                        Counsel for Defendant
                        JOHN JAMES RODRIGUES